UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HAIDAR ABDULATIF AOUN,

    Defendant.

Case No. 17-cr-20859-001

HON. JUDITH E. LEVY

_____

### DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE
_____

NOW COMES Defendant, by and through his attorney, Anjali Prasad, and respectfully requests that the Court order his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21. 2018).

    Respectfully Submitted,

/s/ Anjali Prasad
ANJALI PRASAD (P75771)
Prasad Legal, PLLC
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 733-5006
aprasad@prasadlegal.com

May 18, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

       Plaintiff,                  Case No. 17-cr-20859-001

                                   HON. JUDITH E. LEVY

v.

HAIDAR ABDULATIF AOUN,

       Defendant.

_____

**BRIEF IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

_____

Defendant Haidar Abdulatif Aoun ("Aoun") pleaded guilty to an Information charging him with unlawful WIC transactions at his Detroit supermarket. He is currently serving his 41-month sentence in FCI McKean and is scheduled to be released on September 7, 2021. Aoun respectfully moves this Court for compassionate release due to his age and chronic health conditions.

The First Step Act of 2018 ("FSA") expressly permits Aoun to move this Court for compassionate release due to his age and chronic health conditions, which put him at a higher risk of contracting COVID-19 and falling severely ill. *See* 18 U.S.C. §3582(c)(1)(A)(i). Under the amended

2

statute, a district court can reduce a sentence for "extraordinary and compelling reasons" in two circumstances: (i) upon motion of the Director of the Bureau of Prisons ("BOP"); or (ii) upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Cantu,* No. 05-cr-458, 2019 U.S. Dist. LEXIS 100923, at *6-12 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended § 3582(c)(1)(A) [defendant] has standing to bring this motion "because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response").

The Court may also waive the exhaustion requirement if a recognized exception applies. *See, e.g., United States v. Coles,* No. 18-cr-20254, 2020 U.S. Dist. LEXIS 67591 (E.D. Mich. April 17, 2020); *Miller v. United States,* No. CR 16-20222-1, 2020 U.S. Dist. LEXIS 62421 (E.D. Mich. April 9, 2020); *United States v. Zukerman,* No. 16 CR. 194 (AT), 2020 U.S. Dist. LEXIS 59588 (S.D.N.Y. April 3, 2020); *United States v. McCarthy,* No. 3:17-CR-0230 (JCH), 2020 U.S. Dist. LEXIS 61759 (D. Conn. Apr. 8, 2020); *United States v. Perez,* No. 17 CR. 513-3 (AT), 2020 U.S. Dist.

LEXIS 57265 (S.D.N.Y. Apr. 1, 2020). These exceptions include a finding that exhaustion would be futile or would subject the individual to undue prejudice. *Miller v. United States, supra,* at *2-3 (holding these exceptions to the exhaustion requirement were present and granting petitioner's release) (quoting *Washington v. Barr,* 925 F.3d 109, 118 (2d Cir. 2019)).

Aoun petitioned the Warden for compassionate release on April 29, 2020 and is still awaiting a response. Requiring Aoun to wait any longer, given his vulnerability to COVID-19 and the exigency of a rapidly advancing pandemic, could result in catastrophic health consequences and irreparable harm. COVID-19 is spreading at rapid and unprecedented rates. As of May 17, 2020, there are 2,319 federal inmates and 284 BOP staff nationwide who have confirmed positive test results for COVID-19. There have been 56 federal inmate deaths attributed to COVID-19 disease.[1] These number are likely higher, as testing is only administered to inmates who manifest symptoms. *See, e.g., In the Matter of the Extradition of Manrique,* 2020 U.S. Dist. LEXIS16397, at *2 (N.D. Cal. Mar. 19, 2020) ("screening people based on observable symptoms is just a game of catch up").

Accordingly, since time is of the essence, this Court should waive the exhaustion requirement in this instance. *See, e.g., United States v. Abdul*

---

[1] COVID-19 Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavurs/.

4

*Malik Al-Jumail,* No. 12-20272, 2020 U.S. Dist. LEXIS 83120 (E.D. Mich. May 12, 2020); *United States v. Atwi*, No. 18-cr-20607, 2020 U.S. Dist. LEXIS 68282 (E.D. Mich. April 20, 2020); *United States v. Coles,* No. 18-cr-20254, 2020 U.S. Dist. LEXIS 67591 (E.D. Mich. April 17, 2020); *Miller v. United States, supra; United States v. Zukerman,* No. 16 CR. 194 (AT), 2020 U.S. Dist. LEXIS 59588 (S.D.N.Y. April 3, 2020); *United States v. Perez,* No. 17-CR-51303 (AT), 2020 U.S. Dist. LEXIS 57265 at *3 (S.D.N.Y. APR. 1, 2020) (waiving exhaustion requirement where defendant already at "significant risk of suffering catastrophic health consequences" due to COVID-19 pandemic).

Extraordinary and compelling circumstances exist here that warrant Aoun's compassionate release. His age (Aoun turns 57 in December), combined with his underlying health conditions, place Aoun at increased risk of severe illness and death from a COVID-19 infection. Aoun is pre-diabetic and has high blood pressure and arthritis. He had numerous surgeries prior to surrendering to FCI McKean for infirmities that include gastritis, hiatal hernia, and varicose veins. He also suffers from chronic lower back and knee pain. Aoun's poor health was well-documented in his PSIR. *See* PSIR, Paragraphs 56, 57, 103. On top of his pre-existing medical

ailments, Aoun has tested positive for tuberculosis while in custody of the BOP.

According to the Center for Disease Control and Prevention (CDC), individuals of any age who have serious underlying medical conditions are at higher risk for severe illness from COVID-19.[2] Underlying health conditions also contribute to COVID-19 health complications.[3] Because COVID-19 is so new, there has been limited opportunity to study the interaction between tuberculosis and COVID-19.  But one court in California has noted an observational study that found individuals with tuberculosis may be more susceptible to COVID-19.  *Doe v. Barr,* No. 20-CV-02141-LB, 2020 U.S. Dist. LEXIS 64459 (N.D. CAL. APRL. 12, 202). It also found that COVID-19 progression may be more rapid and severe in those individuals with tuberculosis.  *Id.*  Relying on this study in *United States v. Atwi,* No. 18-cr-20607, 2020 U.S. Dist. LEXIS 68282, *13 (Apr. 20, 2020), Honorable Laurie J. Michelson concluded, "regardless of whether latent TB can make a person more susceptible to catching COVID-19, if [defendant] does catch it, the risks to someone with a co-infection of TB and COVID-19 are 'readily apparent,' as both are respiratory diseases that affect

---

[2]     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[3]     https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm.

the lungs." *See* Max Bearak and Joanna Slater, "Among the most vulnerable to coronavirus: The tens of millions who carry HIV and tuberculosis," *Washington Post*, https://wapo.st/2xBSNB5. In releasing an inmate with latent tuberculosis, Judge Michelson stated, "[t]he Court is not willing to take that risk. And it appears the Attorney General does not want the BOP to take this type of risk either." *Atwi,* 2020 U.S. Dist. LEXIS 68282, *14 (*citing* Office of the Attorney General, Memorandum for Director of the Bureau of Prisons, https://bit.ly/3agsRbq, directing BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic").

Moreover, conditions of confinement create a serious risk for the spread of COVID-19, even among a healthy population.[4] Although the BOP may be doing everything in its power to slow the spread of COVID-19 within its facilities, the high density of prison populations makes federal prisons ideal transmission grounds for the virus. *See, e.g.* Kimberly Kindy, *An Explosion of Coronavirus Cases Cripples a Federal Prison in Louisiana, THE WASHINGTON POST* (March 29, 2020). *See also* Claudia Lauer &

---

[4]     *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities,* CENTER FOR DISEASE CONTROL (March 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guideance-correctional-detention.html.

7

Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus, Associated Press* (Mar. 7, 2020). Aoun eats, sleeps, and interacts with individuals in a confined space, making it easier for the virus to spread once introduced. He is also routinely in close contact with staff members who come and go from FCI McKean. Moreover, basic disinfecting tools such as alcohol-based soap, hand sanitizer, and wipes are wholly unavailable within the prison.

In short, Aoun is not a healthy individual. Given the highly infectious nature of COVID-19, the failure of the BOP to stop its spread, the inability of Aoun to practice any of the hygienic and social distancing techniques that CDC has advised to prevent rapid transmission, and the fact that his medical history renders him at higher risk, this Court should find Aoun's legitimate medical risk is a sufficiently extraordinary and compelling reason to grant compassionate release. *See* U.S.C. §3582(c).[5]

Aoun's release is "consistent with applicable policy statements issued by the [United States] Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A), since he does not have any prior convictions for violent or assaultive

---

[5] The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. §1B1.13. These reasons are classified in four categories: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. N. 1(A)-(D).

conduct. *See* PSIR, Paragraph 102.[6] At the time of the underlying offense, Aoun was employed at the Lonyo Market, where he had worked for nearly two decades. Additionally, in its sentencing memorandum, the government noted Aoun had been "fully cooperative during the course of the investigation," that he "fully described his role in the instant offense," and that it believed Aoun had been "candid and forthcoming." *See* Government's Sentencing Memorandum, ECF. No. 13.

Many courts have found that, for high risk individuals, communal prison confinement conditions satisfy the definition of "extraordinary and compelling reason for release" because they make it impossible for vulnerable individuals to "protect [them]selves from the spread of a dangerous and highly contagious virus." *See, e.g., United v. Saad,* No. 16-20197 (E.D. Mich. Apr. 21, 2020) (finding that defendant's age, chronic kidney disease, hypertension, and sleep apnea are extraordinary and compelling reasons for release in light of the COVID-19 pandemic); *United States v. Sawicz,* Case No. 08-cr-287 (ARR) 2020 U.S. Dist. LEXIS 64418, at \*6 (E.D. N.Y. April 10, 2020) (Covid-19 pandemic, combined with defendant's particular vulnerability to complications from COVID-19

---

[6] The present offense is Aoun's third felony conviction. A prior conviction involved government program fraud. Aoun has also been convicted of three misdemeanor offenses. *See* PSIR, Paragraph 101.

because of his hypertension constitutes an "extraordinary and compelling" reason for his compassionate release"); *United States v. Williams,* Case No. 04-cr095/MCR, 2020 U.S. Dist. LEXIS 63824, at *7 (N.D. Fla. April 1, 2020) ("[A]n outbreak of COVID-19 in Williams' facility would likely have fatal consequences for him. Based on these facts, the Court finds that Williams' deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence."); *United States v. Gonzalez,* No. 2:18-CR-0232-TOR-15, 2020 U.S. Dist. LEXIS 56422, at *3 (E.D. Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects of COVID-19. She is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable … compassionate release granted."); *United States v. Campagna,* No. 16 Cr. 78-01 (LGS), 2020 U.S. Dist. LEXIS 54401, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinarily and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); *United States v. Muniz,* No. 4:09-CR-0199-1, 2020 U.S. Dist. LEXIS 59255, at *2 (S.D. Tex. Mar. 30, 2020) ("Because

Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.").

To the extent the government argues that Aoun is somehow not in harm's way because FCI McKean does not report any confirmed cases of COVID-19, "Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases." *United States v. Amarrah,* No. 18-cr-20464, 2020 U.S. Dist. LEXIS 80396 (E.D. Mich. May 7, 2020). The Bureau of Prisons recently discovered this when a 53-year-old inmate at FCI Milan who went into respiratory failure tested positive for COVID-19 only *after* he was transported to a local hospital.[7] That is because this disease spreads asymptomatically, and the BOP has yet to implement a universal testing regimen. *See* Sadie Gurman, *More Than 70% of Inmates Tested in Federal Prisons Have Coronavirus,* The Wall Street Journal (Apr. 30, 2020), https://www.wsj.com/artciles/more-than-70-of-inmates-tested-in-federal-prisons-have-coronavirus-11588252023 (noting that "prison officials expect [this number] to rise as they expand testing with the focus on the hardest-hit

---

[7]   This was FCI Milan's first reported inmate death due to COVID-19. https://www.bop.gov/resources/news/pdfs/20200427_press_release_mil.pdf.

11

facilities"). Thus, "the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff." *United States v. Amarrah, supra.*[8]

Nor should the government's "cut in line" argument carry any weight, since there is no reason any prisoner would lose access to home confinement should Aoun be released. To the contrary, during this unprecedented pandemic, institutions with large prison populations should welcome a decrease in the number of high-risk individuals confined therein. *See Basank v Decker,* No. 20 CIV. 2518 (AT). 2020 U.S. Dist. LEXIS 53191 (S.D.N.Y. Mar. 26, 2020) (holding public health and safety are served best by rapidly decreasing number of individuals in confined conditions). Moreover, a defendant neither "cuts in line," nor "interfere[s] with [BOP's] process," by exercising his statutory right to seek judicial review. *United States v. Amarrah, supra.*

In short, the current conditions of Aoun's confinement, which he has no power to alter, expose him to a substantial risk of contracting COVID-19. And Aoun's age and numerous medical conditions render him substantially

---

[8] As of May 17, 2020, there have been 56 federal inmate deaths attributed to COVID-19 disease. COVID-19 Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavurs/.

12

likely to suffer a dire outcome should he contract the virus. In light of the expectation that the COVID-19 pandemic will continue to grow and spread, *United States v. Colvin,* No. 3:19-CR-179, 2020 U.S. Dist. LEXIS 57962, at *4 (D. Conn. April 2, 2020), the reasons justifying Aoun's release are compelling and extraordinary.[9]

Respectfully Submitted,

/s/ Anjali Prasad
ANJALI PRASAD (P75771)
Prasad Legal, PLLC
117 W. Fourth Street, Suite 201
Royal Oak, MI 48067
(248) 733-5006
aprasad@prasadlegal.com

Dated: May 18, 2020

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all registered parties.

/s/ Anjali Prasad
Anjali Prasad (P75771)

---

[9] Aoun would serve the remainder of his sentence in his Dearborn residence, a four-bedroom, 2139 square foot home where he resides with his wife and four children.